UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZION WALKER,<br><br>        Plaintiff,<br><br>    -against-<br><br>CITY OF NEW YORK, and JANE AND JOHN DOE AGENTS OF THE NEW YORK CITY POLICE DEPARTMENT,<br><br>        Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Index: -CV- |

Plaintiff, Zion Walker ("Walker"), by his attorneys at Barket Epstein Kearon Aldea & LoTurco, LLP, bring this action against the City of New York and Jane and John Doe Agents of the New York City Police Department, who in the early morning hours on August 13, 2023, executed a no-knock search warrant for the wrong premises and unlawfully detained Walker during the search.

## INTRODUCTION

1.      "In a no-knock warrant situation, the police exercise extraordinary governmental power to intrude upon the sanctity of the home and take temporary control of the premises and its occupants. . . . As a result, the municipality's duty to the individuals in the targeted premises, a limited class of potential plaintiffs, exceeds the duty the municipality owes to members of the general public. A special duty therefore arises . . . running to the individuals within the targeted premises at the time the warrant is executed." *Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 318 (2022).  This case is about a no-knock warrant executed at the wrong premises in an apartment complex in the Bronx.

1

2. At all relevant times, the Plaintiff, Zion Walker, lived in a separately rented, two-bedroom apartment suite in the Bronx.  While alone in his quiet bedroom before dawn, a SWAT team burst into his room, kicked open his door, and forced him onto the floor in handcuffs while holding loaded rifles in his face.  The officers raiding his bedroom kept Walker on the ground while searching his room.  And subsequently, detectives entered and flashed a warrant to Walker, who noticed that the correct target of the search was the other bedroom in the apartment suite—not Walker's.

3. Nonetheless, the agents of the New York City Police Department continued to ransack and search Walker's room, causing physical damage to his furniture and extreme emotional damage to Walker himself.  He brings the present action seeking redress for the damages inflicted by the officers' violation of his rights under the Fourth Amendment and New York State law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the Constitution of the United States and the New York Constitution.  Jurisdiction is conferred upon this Court under 28 U.S.C. §§1331 and 1343(a)(3), as this is a civil action arising under the Constitution and laws of the United States.

5. This Court may exercise supplemental jurisdiction over the state law causes of action herein pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in the Southern District of New York under 28 U.S.C. §§1391(b)&(C), because that is the judicial district in which the claims arose and where Plaintiff resides.

## MUNICIPAL LAW OBLIGATIONS

7. Walker timely served a notice of claim upon the City of New York on or about September 29, 2023, less than ninety days after his claims accrued.

8. Plaintiff attended and participated in a hearing pursuant to N.Y. Gen. Municipal Law §50-H on January 19, 2024. More than thirty days have elapsed since Plaintiff served his Notice of Claim, and Walker's claims have not been settled, adjusted, or otherwise withdrawn.

## PARTIES

9. Plaintiff, Zion Walker resides in Bronx County, New York, and brings this suit in his individual capacity.

10. Defendants John and Jane Does, police officers and detectives at the New York City Police Department were at all relevant times agents and offices of New York City, a municipality in the State of New York, acting under color of law. Their true identities will be added to the caption in this matter upon the Plaintiff's identification of the additional officers who raided his home, the wrong unit, on August 13, 2023.

11. Defendant police officers and detectives were acting in the scope of their employments under color of state law at all relevant times. The detectives and officers are sued in their individual capacities.

12. Defendant New York City is a municipality in the State of New York. New York City, at all relevant times, was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employment under color of state law, and it is liable in this action pursuant to the doctrine of *respondeat superior*.

**STATEMENT OF FACTS**

13. Walker lived at 739 Arnow Avenue, on the first floor of a six-floor apartment building located in Bronx County, New York.

14. The apartment had two separate bedroom-residences, with individual locks and separate keys.

15. The other resident in the suite, in the separate bedroom unit, was named David.

16. The bedrooms are toward the back of the apartment, separated by the living room, with one bedroom and the left, and another bedroom on the right.

17. Walker lived in the bedroom on the left and his roommate lived in the bedroom on the right.

18. Upon information and belief, police officers obtained a search warrant for David's room on or before August 13, 2023.

19. Upon information and belief, the search warrant indicated the location of David's room within the suite.

20. Walker was not involved in criminal activity.

21. Walker was not suspected of having engaged in criminal activity.

22. Before dawn on August 13, Walker was in his bedroom.

23. At approximately 1:00 a.m. Walker was in his bedroom with the door closed when a team of police officers wearing bulletproof vests, helmets, and masks, kicked open his bedroom door.

24. After entering his bedroom, officers pointed their rifles at Walker.

25. In executing the warrant, the Defendants did not knock before going through the front door to the suite, nor through Walker's door.

26. A male officer ordered Walker to get on the ground at gunpoint.

27. An officer told Walker that the NYPD had a search warrant when instructing Walker to get on the ground.

28. The officer did not show Walker the search warrant nor did the officer describe the contents of the warrant.

29. The officer held Walker face down on the ground for between two and five minutes.

30. The officer then moved Walker to a sitting up position, but kept him on the ground.

31. The officers searched Walker's bedroom.

32. The officers searched the living room.

33. In conducting the search, the officers flipped the couches.

34. After the officers wearing SWAT gear left, a second group of NYPD officers and two detectives entered Walker's unit.

35. At this point, while Walker was still sitting on the ground, an officer handcuffed Walker.

36. Officers then moved Walker to a standing position.

37. The officers positioned Walker so that he could not visually observe what the officers were searching.

38. Walker could hear objects being thrown around in his bedroom for approximately a half-hour.

39. In searching Walker's unit, officers ransacked his bedroom and his belongings.

40. The detectives told Walker they were looking for firearms.

41. After thirty minutes of searching, the detectives allowed Walker to briefly view the search warrant.

42. Walker understood the warrant to authorize a search of David's room rather than his own.

43. In executing the search warrant, officers searched the wrong bedroom.

44. Officers continued the search in the kitchen for approximately another fifteen minutes.

45. After searching the kitchen, the detectives informed Walker that they did not find any firearms in the apartment.

46. Walker remained handcuffed during the entirety of the search.

47. Walker estimated that it was approximately 5:00 a.m. by the time the officers left.

48. After the incident, Walker did not feel safe in his home and had trouble sleeping.

49. Because of his anxiety, and fear for his safety, Walker left his home and lived with a family member for a week.

50. Walker was scared to return home.

51. Walker suffered from anxiety and missed a week of work.

52. Because Walker was paid hourly, he missed a week's worth of pay.

53. Because of Walker's anxiety and fear, he began to use alcohol and marijuana.

54. Walker saw a therapist, Ricky Adler, at work to help with his mental health problems following the incident.

55. Walker was not afraid of the police before this incident.

56. Following this incident, Walker is now scared of the police.

57. The officers damaged Walker's apartment, including doors and furniture

58. There was no warrant or probable cause authorizing the Defendants to search Walker's unit.

59. The Defendants acted objectively unreasonably in executing the warrant in Walker's unit.

60. The Defendants had no probable cause to enter Walker's unit.

61. Before executing the warrant, the Defendants knew or should have known that Walker's unit was not the dwelling that formed the target of any search warrant.

62. The Defendants remained in the unit even after they knew or should have known that they were searching the wrong unit.

63. There was no probable cause to handcuff and detain Walker.

64. The Defendants acted objectively unreasonably in detaining Walker.

## JURY DEMAND

65. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in the Complaint.

## CAUSES OF ACTION

### FIRST: UNREASONABLE SEARCH IN VIOLATION OF THE FOURTH AMENDMENT
42 U.S.C. §1983
*Against the Individual Defendants*

66. Plaintiffs repeat the allegations above as though set forth again herein.

67. The Jane and John Doe Defendants executed a search of the Plaintiffs' unit.

68. The Defendants did not have a valid warrant to search the Plaintiffs' unit.

69. The Defendants' search of the Plaintiffs' unit was unreasonable.

70. The Defendants lacked probable cause to justify a search of the Plaintiffs' unit.

71. There was no applicable exception to the warrant requirement to search the Plaintiffs' unit beyond the period of conducting a limited protective sweep.

72. The Defendants knew or should have known that they lacked a warrant to search the Plaintiff's unit.

73. Upon information and belief, Defendant Does had special knowledge of the correct premises to be searched, as (s)he had participated in applying for the warrant to search the different unit.

74. Knowing the correct unit to be searched, Defendant Does nevertheless personally participated in the execution of the search warrant in the wrong unit.

75. Upon executing the search warrant, Defendant Does observed Walker was living in the separately locked unit that was omitted from the search warrant.

76. Upon executing the search warrant, Defendant Does knew or should have known that Walker was not the target of the search warrant, but nevertheless allowed the warrant execution to continue.

77. Without a warrant, probable cause, or legal justification, Defendant Does engaged in an unlawful search of Plaintiff's unit, including by entering the bedroom, and searching his personal belongings.

78. At no point did Plaintiff consent to the search.

79. The Defendants seized Plaintiff's unit for an unreasonable period of time.

80. The Defendants did not have a valid warrant to seize Plaintiff's unit.

81. The Defendants lacked probable cause to seize Plaintiff's unit.

82. The Defendants knew or should have known that they lacked a basis to remain in Plaintiff's unit and continue conducting a search after securing the scene.

83. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, and damage to property.

84. The Plaintiff is entitled to compensatory damages commensurate with the damage caused by the Defendants' unlawful and unreasonable no-knock search and seizure of the unit.

85. The Plaintiff is entitled to punitive damages in light of the reprehensible nature of the Defendants' conduct.

86. Plaintiff is entitled to attorney's fees and court costs arising under 42 U.S.C. §1988(b).

**SECOND: VIOLATION OF RIGHT TO BE FREE OF ILLEGAL SEARCH AND SEIZURE (NEW YORK STATE LAW)**
*Against the City and the Individual Defendants*

87. Plaintiff repeats the allegations above as though set forth again herein.

88. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of state law committed by its agents.

89. Without a warrant, probable cause, or legal justification, the Individual Defendants engaged in an unlawful search and seizure of Plaintiff's unit, including by entering his individual unit, searching his bedroom and personal belongings, and seizing the premises.

90. To the extent that the Individual Defendants were not directly involved in the unlawful search and seizure of Plaintiff's unit, the Individual Defendants failed to intervene in the unlawful search.

91. The Individual Defendants conduct violated Plaintiff's rights under New York State law.

92. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, property, and legal and court expenses as set forth above.

93. The Plaintiff is entitled to compensatory and punitive damages, attorney's fees, and costs.

### THIRD: VIOLATION OF RIGHT TO BE FREE OF ILLEGAL SEARCH AND SEIZURE (NEW YORK CITY)
N.Y.C Administrative Code §8-802, *et seq.*
*Against the City and the Individual Defendants*

94. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

95. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of City law committed by its agents.

96. Without a warrant, probable cause, or legal justification, the Individual Defendants engaged in an unlawful search and seizure of Plaintiff's unit, including by entering his individual unit, and searching his bedroom and personal belongings.

97. At no point did Plaintiff consent to a search or seizure.

98. To the extent that the Individual Defendants were not directly involved in the unlawful search and seizure of Plaintiff's unit, the Individual Defendants failed to intervene in the unlawful search and seizure.

99. The Individual Defendants' conduct violated Plaintiff's rights under New York City law.

100. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, property, and legal and court expenses as set forth above.

101. Plaintiff is entitled to compensatory and punitive damages, attorney fees and court costs under Section 8-805.

### FOURTH: FALSE ARREST AND UNLAWFUL SEIZURE OF PLAINTIFF
42 U.S.C. §1983
*Against the Individual Defendants*

102. Plaintiff repeats the allegations above as though set forth again herein.

103. Plaintiff Walker was illegally seized.

104. The Defendants intended to confine Plaintiff Walker.

105. The Defendants handcuffed Plaintiff Walker.

106. Plaintiff Walker was conscious of his confinement.

107. Plaintiff Walker did not consent to the confinement.

108. While he was in handcuffs, Plaintiff Walker was not free to leave.

109. There was no probable cause to detain Plaintiff.

110. To the extent that officers lawfully detained Plaintiff during an initial protective sweep, there was no probable cause to continue to detain Plaintiff thereafter.

111. There was no reasonable suspicion to detain Plaintiff.

112. Because of the false arrest, Plaintiff suffered emotional harm, including but not limited to exacerbating Plaintiff Walker's predisposition toward psychological illness and distress.

113. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental distress, anguish, humiliation, loss of income, property, and legal and court expenses as set forth above.

114. The Plaintiff is entitled to compensatory and punitive damages, attorney's fees, and costs.

### FIFTH: FALSE ARREST AND IMPRISONMENT UNDER STATE LAW
*Against New York City and the Individual Defendants*

115. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

116. The individual defendants acted intentionally with knowing disregard for Plaintiff's rights under New York state law, in falsely detaining and imprisoning Plaintiff against his will. Plaintiff was conscious of, and at no point consented to, the confinement by the Individual Defendants.

117. The actions of the Individual Defendants in falsely detaining, arresting, and imprisoning Plaintiff without reasonable suspicion or probable cause violated Plaintiff's rights under New York state law.

118. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly vicariously liable as principal for all torts in violation of state law committed by its agents.

119. Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, and of damages including pain, suffering, mental

distress, anguish, humiliation, loss of income, property, and legal and court expenses as set forth above.

120. Plaintiff is entitled to compensatory and punitive damages, attorneys fees, and court costs.

### SIXTH: VIOLATION OF RIGHT TO BE FREE FROM FALSE ARREST (NEW YORK CITY)
N.Y.C. Administrative Code §8-802
*Against the City and the Individual Defendants*

121. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

122. In committing the acts alleged herein, each of the Individual Defendants were members and agents of the NYPD, acting at all relevant times within the scope of their employment. The Defendant New York City is accordingly liable as principal for all torts in violation of City law committed by its agents.

123. Without a warrant, probable cause, or legal justification, the Individual Defendants falsely detained, arrested, and imprisoned Plaintiff against his will.

124. Plaintiff was conscious of his confinement by the Individual Defendants.

125. Plaintiff at no time consented to confinement by the Individual Defendants.

126. The Defendants' actions were the direct and proximate cause of violations of Plaintiff's constitutional, state, and other legal rights, including loss of liberty, and of damages including pain and suffering, mental distress, anguish, humiliation, loss of income, property, and legal expenses as set forth above.

127. Plaintiff is entitled to compensatory and punitive damages, attorneys fees, and court costs.

## SEVENTH: NEGLIGENCE UNDER STATE LAW
*Against the City and the Individual Defendants*

128. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

129. The Defendants owed a special duty of care to the Plaintiff as a resident of premises that were subject to a no-knock warrant.

130. The Defendants breached their duty of care to the Plaintiff by executing the warrant at the wrong location, subjecting him to a no-knock warrant notwithstanding the fact that the warrant itself excluded his unit from the scope of the search.

131. Plaintiff suffered extraordinary damages as a consequence of the Defendants' breach, including physical damage to his apartment, temporary loss of liberty, pecuniary damages, and, worst of all, severe and long-term emotional distress.

132. Plaintiffs' damages were a direct and proximate result of the Defendants' negligence, as it was reasonably foreseeable at all times that a no-knock warrant executed at the wrong location would cause substantial damage to a victim on the receiving end of such a dramatic and baseless show of force.

133. Plaintiff is entitled to compensatory and punitive damages, attorney fees, and court costs.

134. The Defendant City is vicariously liable for the negligence of the Individual Defendants, as at all relevant times they were acting within the scope of their employment—with the City's assent for its benefit, and under the City's control.

**WHEREFORE,** Plaintiff requests as follows:

    A.    That the Court award compensatory damages to Plaintiffs and against the defendants jointly and severally, in an amount to be determined at trial;

B. That the Court award punitive damages to Plaintiffs and against all defendants in an amount to be determined at trial at a sum that will deter such conduct by defendants in the future;

C. That the Court award attorney's fees, costs and disbursements pursuant to 28 U.S.C. §2414 and 42 U.S.C. §1988, and relevant state and city laws;

D. For a trial by jury;

E. For a pre-judgment and post-judgment interest and recovery of costs; and

F. For any and all other relief to which they may be entitled.

Dated: Garden City, New York
August 29, 2024

**BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP**

/s/ *Alexander Klein*
Alexander Klein, Esq.
Joseph Rochman, Esq.
666 Old Country Road, Suite 700
Garden City, New York 11530
(516) 745-1500